ISMAIL J. RAMSEY (CABN 189820)
United States Attorney
THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division
WENDY M. GARBERS (CABN 213208)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6475
    FAX: (415) 436-7234
    wendy.garbers@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>DIEGO HERNANDEZ,<br><br>    Defendant. | No. 22-00402-JSC<br><br>**UNITED STATE'S SENTENCING MEMO**<br><br>Date: July 19, 2023<br>Time: 10:00 a.m. |

## I.     INTRODUCTION

Diego Hernandez is young man who has had numerous interactions with law enforcement regarding narcotics and firearms violations in the past few years.  He committed the instant offense in May 2022, when he was discovered with methamphetamine packaged for sale in his possession, along with a firearm.  On October 18, 2022, Hernandez was charged in a one-count Indictment with Possession with the Intent to Distribute Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C).  (ECF 1.)  On April 12, 2023, Hernandez took responsibility for his crimes and entered a guilty plea.  (ECF 21.)  Notwithstanding the serious and repeated nature of Hernandez's crime, the government recommends that he be given a below-Guidelines sentence of 51 months.

## II.    BACKGROUND

On May 19, 2022, San Francisco police offers discovered Hernandez carrying drugs for sale, along with a firearm, in San Francisco's Mission District.  Offers first observed Hernandez, who they were familiar with from prior incidents and arrests, walking southbound on York St., towards 23rd St.  Hernandez was wearing a black jacket, with a hood over his head, and carrying a black backpack, with a Swiss Brand logo.

Hernandez was on probation and subject to probation searches.  The officers thus turned their car around, with the intention of conducting a probation search of Hernandez.  Hernandez looked in the direction of the officers and then quickly ducked inside Pop's Bar back entrance, which is located on York St., near the corner of 24th St.  It appeared that Hernandez was attempting to be evasive.

The officer split up so that they could cover the back and front entrances of Pop's Bar.  After Officer Cubas entered the front of the bar, Hernandez saw him and walked quickly towards the back exit.  Hernandez was no longer wearing the black backpack.  Officer Cubas found the backpack underneath a high table near the rear exit.  Officer Cubas recognized the backpack as the same one that Hernandez had been wearing.  Officer Cubas conducted a probation search of Hernandez's backpack and found a container containing multiple baggies and a pill bottle inside, along with a black and silver scale.  The substance in the baggies was subsequently tested at the DEA's Western Laboratory and determined to be 48.7 grams (net) of pure methamphetamine.

Officer Cubas conducted a further search of Pop's Bar and located a Smith & Wesson firearm on the floor in the back hallway of the bar, which he suspected that Hernandez discarded there.  Pop's Bar had a number of surveillance cameras.  A review of the surveillance footage showed Hernandez walking into Pops Bar, using the York St., back entrance.  Hernandez is then seen on camera walking towards the back hallway, where the firearm was found.  He appears to crouch down in the back hallway, consistent with depositing the firearm in the location it was found.  Hernandez is seen again on camera view walking towards the back, York. St. exit.  After looking out the door, Hernandez comes back into the bar and takes off his backpack and deposits the backpack underneath the high table near the exit, where it was found.  He then appears to walk towards the front exit, until he sees Officer Cubas entering the bar.

At that point, Hernandez turns around and exits through the rear, York St. entrance, where he is ultimately apprehended.

After his arrest, Hernandez's DNA was compared to the DNA found on the Smith & Wesson firearm. The San Francisco Police Department's crime lab analyzed the DNA and determined that the DNA on the firearm's grip matched Hernandez's with a likelihood ratio of 8.72 septillion. The DNA on the magazine also matched Hernandez's, but with a lesser likelihood ratio of 132 thousand.

## III. SENTENCING GUIDELINES CALCULATIONS

The government agrees with the Sentencing Guidelines calculations set forth in the PSR:

a. **Base Offense Level, U.S.S.G. §2D1.1(c)(6):** **28**

b. **Specific offense characteristics (possession of a firearm (§2D1.1(b)(1)):** **+2**

c. **Acceptance of Responsibility §3E1.1:** **-3**

d. **Adjusted Offense Level:** **27**

(PSR at ¶¶ 22-31.) That said, in the Plea Agreement, the government agreed to recommend a low-end of the Guideline range sentence associated with an Adjusted Offense Level of 23. (ECF 22 at ¶ 15.)

The PSR calculates Hernandez's criminal history as category III. (PSR at ¶ 41.) The government agrees with this calculation as well. As reflected in the PSR, the Guidelines range for imprisonment associated with adjusted offense level 27 and Criminal History Category III is 87-108 months. (*Id.* at ¶ 84.)

## IV. GOVERNMENT'S SENTENCING RECOMMENDATION

The Court must impose a sentence sufficient, but not greater than necessary, to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; to afford adequate deterrence; to protect the public; and to rehabilitate the defendant. 18 U.S.C. § 3553(a)(2); *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). Section 3553(a) sets forth several factors that the Court must consider in determining a just sentence: (1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) the purposes of sentencing; (3) the kinds of sentences available; (4) the Guidelines range for sentences; (5) any pertinent policy statements; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to any victims. 18

1    U.S.C. § 3553(a); *Carty*, 520 F.3d at 991.  The Guidelines are "the starting point and the initial

2    benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007).  Although the Guidelines are not binding,

3    they "reflect a rough approximation of sentences that might achieve section 3553(a)'s objectives." *Rita*

4    *v. United States*, 551 U.S. 338, 350 (2007).

5         The Court should impose a sentence here of 51 months, which is a significantly below-

6    Guidelines sentence.  This sentence is supported by Hernandez's criminal history, but also takes into

7    account his relative youth, personal drug use, and difficult family circumstances.  Although Hernandez

8    is only 21 years old, he has had a significant number of arrests and convictions for narcotics and

9    firearms offense.  In January 2020, Hernandez was convicted of Grand Theft from a Person, for a

10   robbery which involved use of a firearm.  (PSR at ¶ 31.)  Hernandez was a juvenile and was sentenced to

11   18 months' probation.  In July 2021, Hernandez was convicted for carrying a concealed weapon (a

12   felony) and sentenced to 104 days in jail and two years' probation.  (PSR at ¶ 35.)  Hernandez also has

13   additional arrests for narcotics possession with intent to sell.  (PSR ¶¶ 45, 46.)

14        This incident occurred on May 19, 2022.  Hernandez was arrested for two separate firearms

15   incidents thereafter, before being taken into custody on this charge:  on September 18, 2022, he was

16   arrested in Oakland for carrying a firearm.  (PSR at ¶ 49.)  Less than a month later, on October 7, 2022,

17   Hernandez was again arrested for carrying a concealed weapon.  (PSR at ¶ 51.)  This is a very

18   concerning trend and indicates that a significant sentence is necessary to deter Hernandez from engaging

19   in this conduct in the future.

20        The Ninth Circuit has held that a sentencing court acts fully within its discretion when it

21   "consider[s] the defendant's repetition of the same or similar offenses" and bases its sentence on that

22   circumstance.  *United States v. Segura-Del Real*, 83 F.3d 275, 277 (9th Cir. 1996).  Doing so is

23   especially appropriate here.  Hernandez has repeated the same dangerous behavior over a sustained

24   period.  A 51-month sentence is therefore appropriate and is sufficient, but not greater than necessary to

25   achieve the goals of sentencing.

26        Finally, the Court should impose a 3-year term of supervised release with an expanded search

27   condition.  Hernandez's history of narcotics and firearms arrests and offenses proves that he poses a

28

high risk of reoffending, and a warrantless search condition is "necessary to mitigate that risk." *See*

*United States v. Cervantes*, 859 F.3d 1175, 1184 (9th Cir. 2017).

**V.     CONCLUSION**

For the foregoing reasons, the government recommends that the Court sentence Hernandez to 51

months in prison, 3 years supervised release, a $100 special assessment, and order Hernandez to forfeit

the firearm (Smith & Wesson caliber Taurus model PT 24/7G2 semiautomatic pistol with serial number

SGW66825), ammunition and scale seized on May 19, 2022.


DATED:  July 10, 2023                                     Respectfully submitted,
                                                         ISMAIL J. RAMSEY
                                                         United States Attorney


                                                         */s/ Wendy M. Garbers*
                                                         WENDY M. GARBERS
                                                         Assistant United States Attorney